IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| REAL LIFE MEDIA GROUP, LLC, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| MICHAEL D. MCGUIRE, | **Trial By Jury Demanded** |
| Defendant. | |

## COMPLAINT

Plaintiff Real Life Media Group, LLC for its Complaint against Defendant Michael D. McGuire states as follows:

1. Real Life is a Missouri limited liability company with a principal place of business located at 9823 S. Corn Road, Lone Jack, Missouri 64070.

2. Michael McGuire ("McGuire") is a citizen and resident of the State of New York.

### PERSONAL JURISDICTION AND VENUE

3. McGuire has regularly conducted business in the Western District of the State of Missouri and has performed acts giving rise to this lawsuit in, and has had significant contacts with, the State of Missouri, particularly the geographic area defined as the federal judicial district known as the Western District of Missouri.

## SUBJECT MATTER JURISDICTION

4. This Court has exclusive jurisdiction under 28 U.S.C. § 1338(a) for an action arising under the copyright laws of the United States.

5. This Court further has jurisdiction under 28 U.S.C. § 1331 for actions arising under the laws of the United States.

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332, as the Plaintiff, on the one hand, and McGuire, on the other hand, are citizens of different states and the amount in controversy exceeds $75,000.

7. This Court has supplemental jurisdiction over all claims arising under state law pursuant to 28 U.S.C. § 1367(a).

8. For declaratory counts, this Court has jurisdiction under 28 U.S.C. § 2201-02.

9. This Court has personal jurisdiction over McGuire in that, McGuire:

a. has transacted business with Plaintiff's assignees or predecessors in interest in the State of Missouri and in particular this judicial district;

b. McGuire has entered into contracts with Plaintiff's assignees or predecessors in interest within Missouri, which contracts were to be performed in Missouri and in particular this judicial district.

10. Further, as is more fully stated herein, McGuire has purposefully availed himself of the privilege of conducting business in this state and the events giving rise to this lawsuit are a direct result of McGuire conducting such business. Further, the injury giving rise to this lawsuit occurred within Missouri. McGuire has maintained a systematic and continuous presence in Missouri. McGuire has thus satisfied the requirements of Missouri's long-arm statute and minimum contacts analysis.

11. This judicial district is therefore a proper venue under 28 U.S.C. §§1391(b)(2) and 28 U.S.C. §1400 in that a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district and therefore McGuire may be found in this district.

## FACTS

12. Andrea Thompson is a citizen of the State of Missouri, and is more particularly a citizen residing in the geographic area defined as the federal judicial district known as the Western District of Missouri.

13. Joe Thompson is the husband of Andrea Thompson and is also a citizen of the State of Missouri, and is more particularly a citizen residing in the geographic area defined as the federal judicial district known as the Western District of Missouri.

14. Andrea Thompson is a preacher and the founder and head of Moving Beyond Ministries, a Missouri nonprofit corporation (the "Ministry"). On her path to becoming a preacher, Andrea Thompson overcame many obstacles in her life, embraced Christianity and dedicated herself to spreading the teachings of Christianity through the Ministry.

15. Having taken a colorful and event-filled path to becoming a minister and running the Ministry, Andrea Thompson formed an idea to better promote herself, with specific thought of writing a book about her life experiences. Towards that end, she reached out for assistance and in October of 2013, was introduced to McGuire.

16. Over the course of the several months following October 2013, Andrea Thompson hired McGuire to perform several public relations projects for her.

17. In early 2014 Thompson and McGuire began discussing arrangements by which McGuire would collaborate with Thompson to write a biographical book about Thompson using Thompson's input, ideas and recounts of her life history (the "Book").

18. In March 2014 Thompson and McGuire agreed that in return for McGuire's help in writing the Book, McGuire would receive $750 per chapter plus $1.00 for every copy of the Book printed by the Thompsons. In reaching this Agreement McGuire specifically agreed that Thompson would be deemed, treated and listed as the only author of the Book and McGuire would only receive credit as the editor of the Book. This agreement is specifically set out in two emails prepared, drafted and sent by McGuire. McGuire intended for Andrea Thompson to rely on McGuire's representations.

19. During the course of 2014, McGuire proceeded to write the Book using the content instructed and provided by Andrea Thompson. All along he was paid on behalf of Andrea and Joe Thompson for each chapter. The content of each chapter was reviewed by Andrea and Joe Thompson, who provided comments and revisions to McGuire. As the Book neared completion, Andrea Thompson and McGuire agreed that the Book would be titled "Jesus Girl - Doing Real Life." In December 2014, the Book was completed and readied for mass printing.

20. In completing the Book and readying it for mass printing, McGuire arranged for the layout of the Book, including its covers, which layout was agreed to by Andrea Thompson. A copy of the as-printed Book's front cover accompanies this Complaint as Exhibit A. A copy of the as-printed Book's back cover accompanies this Complaint as Exhibit B.

4

Case 4:15-cv-00881-BCW   Document 1   Filed 11/09/15   Page 4 of 9

21. As shown by Exhibits A and B, the cover arranged for by McGuire specifically confirms his agreement to Andrea Thompson that Andrea Thompson was to have all authorship rights to the Book, be recognized publically and in any necessary filings or registrations as the legal author of the Book and have all rights associated with being an author.

22. Towards the end of 2014 and the beginning of 2015, McGuire initiated new discussions with Andrea and Joe Thompson about his further involvement towards publishing the Book. In this respect, McGuire and the Thompsons discussed general terms for a possible new agreement, which agreement would include assignment of all rights to the Book to a to-be-formed entity that would handle publishing of the Book. At all times during the discussion process, it was clear to, understood and agreed to by all parties that no parties would be bound as to these new terms except upon execution by all of them of a definitive written contract that had been agreed to in advance by all of them.

23. In furtherance of working towards a mutually agreeable written agreement, McGuire proceeded to have Oak Tree Media Group, LLC ("Oak Tree") formed and established as a Missouri, LLC. Andrea Thompson, Joe Thompson and McGuire held ownership interests in Oak Tree. However, McGuire and the Thompsons never executed the contemplated second agreement regarding publishing of the Book. Three Thousand (3,000) print copies were produced and paid for on behalf of Oak Tree Media Group, LLC to promote the Book. Also, an electronic or digital edition was made available for sale through various websites, including, without limitation, Amazon.com. Print copies were given away, sold and placed on consignment to further promote the Book.

24. In the spring of 2015 the Thompsons ended their relationship with McGuire. Leading up to and upon the termination of their relationship, McGuire asserted and made claims as to his authorship and ownership rights to the Book and has asserted and made claims as to purported obligations of the Thompsons and Oak Tree owed to him related to the Book.

25. Further, upon information and belief, McGuire, either acting individually or ostensibly on behalf of Oak Tree, has made sales of the Book. McGuire has refused to account to the Thompsons for such sales.

26. Since the ending of the Thompsons' business relationship with McGuire, Oak Tree has assigned whatever rights it has to the Book to Andrea and Joe Thompson. The Thompsons have, in turn, assigned whatever rights and claims they have to the Book or against McGuire to Real Life. Real Life thus owns any and all rights to the Book ever owned or possessed by Oak Tree, Andrea Thompson or Joe Thompson.

## COUNT I
## BREACH OF CONTRACT

27. Real Life adopts and incorporates by reference as if fully set out the allegations of paragraphs 1 through 26 of this Complaint.

28. In March 2014, the Thompsons and McGuire entered into a contract in which in return for agreed-upon consideration McGuire would mechanically write the Book and Andrea Thompson would be deemed, treated and listed as the only author of the Book and McGuire would only receive credit as the editor of the Book.

29. By virtue of McGuire asserting and making claims as to his authorship and ownership rights to the Book and asserting and making claims as to purported obligations of

6

the Thompsons and Oak Tree owed to him related to the Book, McGuire has breached his agreement with the Thompsons, clouded title to the Book and thereby has created a real and justiciable controversy among the parties.

30. Further, by virtue of McGuire directly or indirectly effecting sales of the Book and failing to account for same to Andrea Thompson, McGuire has breached the agreement with Andrea Thompson.

31. As a result of McGuire's breach of contract, the Thompsons and Real Life have been damaged in an undetermined amount.

32. Real Life further seeks a declaration of rights from this Court, stating:

a. that by virtue of the contract between Andrea Thompson and McGuire, Andrea Thompson was the author and owner of the copyright to the Book with all rights of authorship attendant thereto, which authorship and ownership interests are now held by Real Life; and

b. that McGuire is required to account to Real Life for all income and profits earned by McGuire from his exploitation of the Book.

## COUNT II
## DECLARATORY JUDGMENT OF COPYRIGHT
## OWNERSHIP AND ACCOUNTING FOR PROFITS

33. Real Life adopts and incorporates by reference as if fully set out the allegations of paragraphs 1 through 32 of this Complaint.

34. An actual and justiciable case or controversy exists between Real Life and McGuire regarding ownership of the copyrights to the Book.

35. In addition to her rights to the Book under their contract, Andrea Thompson also qualifies as a "joint author" of the Book for the reason that the Book was a "joint work"

among Andrea Thompson and McGuire as defined by 17 U.S.C. § 101 in that it is a work "prepared by two or more authors with the intention that the contributions be merged into inseparable or interdependent parts of a unitary whole."

36. Andrea Thompson was thus at least a co-author of the Book by virtue of her contributions to the Book. Real Life as the assignee of those rights, now owns those rights.

37. Real Life seeks a declaration of rights from this Court, stating:

a. that Andrea Thompson as a co-author was a co-owner of the copyright to the Book, which ownership interest is now held by Real Life; and

b. that McGuire is required to account to Real Life for all income and profits earned by McGuire from his exploitation of the Book.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Real Life Media Group, LLC respectfully requests that the Court enter its order and judgment against Defendant Michael D. McGuire and in favor of Plaintiff Real Life Media Group, LLC awarding Plaintiff Real Life Media Group, LLC:

a. damages in an amount in excess of $75,000 to be determined at trial;

b. an accounting of income and profits earned by Defendant as a result of all sales of the Book;

c. an order directing Defendant to account for all amounts due to Real Life Media Group, LLC;

d. a declaration setting forth the rights of Andrea Thompson and Real Life Media Group, LLC as enumerated in Counts I and II;

e. such further relief as the Court deems just and reasonable

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

EVANS & DIXON, LLC

By: /s/ Daniel S. Simon

DANIEL S. SIMON, #47566
501 West Cherry Street, Suite 200
Columbia, MO 65201
Phone: 573-256-8989
Fax: 573-256-5044
dsimon@evans-dixon.com